UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

PROGRESSIVE GULF INSURANCE                                              PLAINTIFF
COMPANY

v.                                                CIVIL ACTION NO. 5:13CV287-DPJ-FKB

KENNETH J. FARVE, et al.                                               DEFENDANTS

ORDER

This insurance-coverage declaratory-judgment action is before the Court on Defendants' Motion to Transfer Venue [47] and cross motions for summary judgment filed by Defendants [46] and Plaintiff [48]. For the reasons that follow, the motion to transfer venue and Progressive's motion for summary judgment are denied, and Defendants' motion for summary judgment is granted.

I.      Facts and Procedural History

At approximately 12:30 a.m. on March 17, 2011, Defendant Kenneth Farve, operating a truck owned by Defendant Bricor, LLC, hit and killed Jason A. Clifton in Port Allen, Louisiana. The involved truck was a listed vehicle on a commercial-auto-insurance policy written by Plaintiff Progressive Gulf Insurance Company and issued to Bricor, but Farve was not listed as an insured driver on the policy. On February 28, 2012, Defendant Wendy Clifton, individually and on behalf of her minor children O.C., D.C., and K.C., filed a wrongful-death lawsuit in Louisiana state court against Farve, Bricor, and Progressive.

On July 31, 2012, Progressive filed its Complaint for Declaratory Judgment in this Court against Farve, Bricor, the Estate of Jason A. Clifton, and Wendy Clifton in her individual and representative capacities (hereinafter "the Cliftons"). Progressive seeks a judgment declaring

that it has no duty to defend or indemnify Farve in the underlying litigation, but it has "entered into an agreement [with Bricor] . . . wherein Progressive . . . agreed to honor its contract of insurance with Bricor . . . and defend and indemnify Bricor . . . pursuant to the policy . . . regardless of the outcome of this litigation." Bricor Resp. [54] ¶ 4.

On September 14, 2012, the Cliftons filed a Motion to Dismiss Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure or, in the Alternative, Motion to Stay [17]. The Court denied those motions on November 6, 2012. Following the close of discovery, the parties filed the pending motions, and Progressive asked for expedited review.

II.     Venue Motion

    A.     Title 28 U.S.C. § 1406

The Cliftons first argue that venue in this district is improper under 28 U.S.C. § 1391, necessitating transfer pursuant to 28 U.S.C. § 1406. But the Cliftons admitted venue in their Answer [11] and failed to raise this objection in their initial motion to dismiss. The Cliftons waived their argument under § 1391. *See* 28 U.S.C. § 1406(b) ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue."); Fed. R. Civ. P. 12(g), (h); *see also Albany Ins. Co. v. Almacenadora Somex, S.A.*, 5 F.3d 907, 910 (5th Cir. 1993).

    B.     Title 28 U.S.C. § 1404(a)

The Cliftons alternatively seek transfer to the Middle District of Louisiana under 28 U.S.C. § 1404, which provides, "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). To obtain a transfer under § 1404, the

movant must demonstrate "good cause." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).

Courts in the Fifth Circuit evaluate good cause based on "the private and public interest factors first enunciated in *Gulf Oil Corp. v. Gilbert*." *Id.* (citing *Gilbert*, 330 U.S. 501 (1947)).

> The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."

*Id.* (citing *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). These factors weigh against transfer.

All of the private interest factors concern the relative abilities of the transferor court and proposed transferee court to try the case in an "easy, expeditious and inexpensive" manner. *Id.* But this case involves a coverage determination under the policy, and both sides appear to agree that the issue can be decided on the summary-judgment record. Thus, no witnesses will be required to testify, and all relevant documents are already in the record. The private-interest factors do not support transfer.

Nor do the public-interest factors overwhelmingly favor transfer. The first public factor is neutral or disfavors transfer based on the two courts' median disposition times and given the extent to which the case has been litigated in this Court. As to the second factor, the Cliftons are correct that Louisiana holds a local interest in the underlying liability dispute. But Bricor is also a Mississippi LLC, and Mississippi has at least some interest in a coverage dispute involving a

Mississippi insured.  The final factors regard application of the law, and as discussed below, Louisiana law applies to the coverage question.  This fact alone is not sufficient to justify transfer.  *See Fin. Cas. & Sur., Inc. v. Zouvelos*, No. H–11–2509, 2012 WL 2886861, at *8 (S.D. Tex. July 13, 2012).

Because the private-interest factors weigh against transfer and the case has proceeded through discovery and the filing of cross-motions for summary judgment, the Court concludes that the Middle District of Louisiana "is not clearly more convenient than the venue chosen by the plaintiff, [so] the plaintiff's choice should be respected."  *In re Volkswagen of America, Inc.*, 545 F.3d at 315.  The motion to transfer is denied.

III.     Motions for Summary Judgment

   A.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (citation omitted).  Conclusory allegations,

speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

    B.    Analysis

At issue in the cross motions is whether Farve was an insured under the policy. But before addressing that issue, the Court must determine whether to apply Louisiana or Mississippi law, and whether a choice-of-law analysis is appropriate for making that decision.

According to Progressive, the Court must apply Mississippi law without regard to a choice-of-law analysis due to Mississippi Code section 83-5-7. That section provides that "[a]ll contracts of insurance on property, lives, or interests in this state shall be deemed to be made therein." The Fifth Circuit has expressed some doubt as to whether that statute speaks to choice of law. *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 244–45 (5th Cir. 2009) (observing that section 83-5-7 "does not expressly speak to any relevant substantive rule concerning insurance policies or choice of law"). And Progressive has not cited any Mississippi cases applying section 83-5-7 as a statutory choice of law. Given the language of the statute, the concerns identified by the Fifth Circuit, and Mississippi's continued use of choice-of-law analysis without reference to section 83-5-7, the Court concludes that the statute does not displace Mississippi's center-of-gravity test.[1]

---

[1] Even if it did, the evidence is undisputed that the insured tractor was not "in this state" as required under section 83-5-7.

1.     Choice of Law

A federal court sitting in diversity applies the choice of law rules of the forum state to determine which state's substantive law applies. *Hartford Underwriters Ins. Co. v. Found. Health Servs. Inc.*, 524 F.3d 588, 593 (5th Cir. 2008). This analysis requires a threshold determination that the laws actually conflict. Here they do.

a.     Competing Law

Favre was not a named insured, but the policy defines "insured" as including "[a]ny person while using, with your permission, and within the scope of that permission, an insured auto you own, hire, or borrow." Defs.' Mot. [46] Ex. 3, at 21. Such clauses are generally referred to as omnibus clauses, and they are interpreted differently in Mississippi and Louisiana.

Courts in Louisiana apply the "initial permission" rule to omnibus-insurance clauses to promote the public policy of affording broad coverage. *See Sensebe v. Canal Indem. Co.*, 58 So. 3d 441, 448 n.8 (La. 2011). This test is discussed in greater detail below, but it removes the question "whether, at the time and under the circumstances of the accident, the driver was proceeding within the limitations of the permission of the assured to use the car." *Parks v. Hall*, 181 So. 191, 194 (La. 1938). The initial-permission rule is considered "so crucial" to Louisiana public policy that in cases such as this, it is "incorporated" into the contract "as if it were written in the policy itself." *Sensebe*, 58 So. 3d at 447. Mississippi law is more restrictive and applies a "minor deviation" test that considers whether the use of the vehicle fell within the scope of permission. *See, e.g., U.S. Fidelty & Guar. v. Bonner*, 467 So. 2d 955, 957 (Miss. 1985).

b.  Center-of-Gravity

Because Mississippi and Louisiana law conflict, the Court turns to Mississippi's center-of-gravity test.  That test involves "the following steps:  (1) determine whether the laws at issue are substantive or procedural; (2) if substantive, classify the laws as either tort, property, or contract; and (3) look to the relevant section of the Restatement (Second) of Conflict of Laws."  *Hartford Underwriters Ins. Co.*, 524 F.3d at 593 (citing *Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 433–34 (Miss. 2006)).  Because the parties seem to agree that the interpretation the omnibus clause is substantive, the Court turns to the appropriate Restatement sections.

Two specific Restatement sections are potentially in play:  section 193, governing casualty insurance contracts, and section 188, governing contracts in general.  *Zurich Am. Ins. Co.*, 920 So. 2d at 434.  Section 193 states:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the *principal location of the insured risk* during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will apply.

Restatement (Second) of Conflict of Laws § 193 (emphasis added).

The Mississippi Supreme Court has adopted section 193.  But it has also explained that "[t]he location of the risk is irrelevant for consideration of the question of coverage" when dealing with movable property like commercial tractors.  *Zurich Am. Ins. Co.*, 920 So. 2d at 434 (citing *Boardman v. United Servs. Auto Ass'n*, 470 So. 2d 1024, 1033–34 (Miss. 1985)).  As explained by the Fifth Circuit, "§ 193 is pertinent only if there is, in fact, a single state which can

7

be identified as the principal location of the risks insured by a policy." *Hartford Underwriters Ins. Co.*, 524 F.3d at 594 (citation and quotation omitted).

In this case, the existence of a risk in Louisiana and Mississippi was known to both parties. As Progressive notes, Bricor LLC is registered as a Mississippi LLC, the policy listed the subject tractor as being garaged in Mississippi, and the policy included Mississippi endorsements. But the Louisiana connections are as readily apparent. For example, the policy identifies the "Named Insured" as Bricor LLC at an address in Louisiana, lists Bricor's insurance agent as residing in Louisiana, identifies insured drivers that reside in Louisiana and none from Mississippi, and designates a Louisiana "Loss Payee" and Louisiana "Additional Insureds." Defs.' Mot. [46], Ex. 3. Progressive also provided Bricor with a Certificate of Insurance listing the "Certificate Holder" as Bricor LLC in Louisiana, the "Insured" as Bricor LLC in Louisiana, and the agent as a Louisiana business. *Id.*, Ex. 11 at 4. Finally, there appears to be no dispute that all of Bricor's operations are entirely within Louisiana where its facilities, equipment—including the subject tractor—, principals, drivers, and insurance agent were are all located. Thus the risk was not confined to a single state, and certainly not confined to Mississippi.

Because section 193 does not apply, the Court looks to section 188, which provides that the law that "has the most significant relationship to the transaction and the parties" should be applied. Restatement (Second) of Conflict of Laws § 188. Section 188 lists several factors the Court should consider in determining which state has the most substantial relationship to the parties and the dispute:

(a) the place of contracting,

>   (b) the place of negotiation of the contract,
>
>   (c) the place of performance,
>
>   (d) the location of the subject matter of the contract, and
>
>   (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

*Id.* § 188(2). Section 188 explains that the foregoing contacts should "be evaluated according to their relative importance with respect to the particular issue." *Id.*

Progressive insists that the place of contracting is Mississippi because Bricor is a Mississippi LLC, the policy indicates (incorrectly) that the insured vehicles were all garaged in Meadville, Mississippi, and Progressive used its Mississippi policy forms in issuing the policy.[2] But "[a]s used in the Restatement . . . , the place of contracting is the place where occurred the last act necessary, under the forum's rules of offer and acceptance, to give the contract binding effect . . . ." *Id.* cmt. e. (cited in *Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Petco Petroleum Corp.*, No. 4:12cv165-CWR-LRA, 2013 WL 5937430, at *5 (S.D. Miss. Nov. 4, 2013)). Under Mississippi law, "[a] contract is not formed until an offeree accepts." *Edwards v. Wurster Oil Co.*, 688 So. 2d 772, 774 (Miss. 1997) (citations omitted).

Neither party endeavors to identify the act of acceptance that consummated the policy. But the policy itself was issued to Bricor at its address in Belle Chasse, Louisiana, through a local insurance agent in Slidell, Louisiana. Moreover, the undisputed evidence indicates that Bricor's principal place of business is in Louisiana, the insured vehicles are all garaged in Louisiana, Bricor has no facilities in Mississippi, and the address under which its LLC is

---

[2] It likewise cites Mississippi Code section 83-5-7 discussed *supra*.

registered is actually a hunting camp used for that purpose. *See* Defs.' Mot. [46] Ex. 5, Begovich Dep. at 51–52. There is no evidence suggesting that Bricor conducted any business out of the hunting camp or that it negotiated, received, and/or accepted the policy in Mississippi. Thus, on the record before it, the Court concludes that Louisiana was the place of contracting and negotiation.[3]

As to the place of performance, the Mississippi Supreme Court has explained that, in coverage cases, the place of performance is where the bulk of "the relevant activities between the parties" to the policy took place. *Zurich Am. Ins. Co.*, 920 So. 2d at 436. As with the place of contracting and negotiation, this factor favors application of Louisiana law because there is no indication that business was conducted in Mississippi.

Regarding the location of the subject matter of the contract, the Mississippi Supreme Court has previously concluded that this factor pointed to the state "where the bulk of [the insured's] equipment, capital, and manpower" were located. *Id.* This factor also points to Louisiana, where all of Bricor's operations are found.

Finally, as to the residence of the parties to the policy, Progressive argues that the state of incorporation is determinative, but the comments to section 188 explain that "with respect to most issues, a corporation's principal place of business is a more important contact than the place of incorporation." Restatement (Second) of Conflict of Laws § 188 cmt. e. Thus, although Bricor is a Mississippi LLC, the more important contact for purposes of the choice-of-law

---

[3]In this regard, the case is distinguishable from *Boardman v. United Servs. Auto. Ass'n*, 470 So. 2d 1024 (Miss. 1985).

analysis is Bricor's principal place of business in Louisiana.  In sum, application of the section 188 factors directs the Court to apply Louisiana substantive law to the coverage question.

Under the final step of the choice-of-law analysis, the Court must determine whether "the relative interests of the forum and other interested states under [Restatement] section 6" rebuts the presumption that Louisiana law applies under section 188.  *Zurich Am. Ins. Co.*, 920 So. 2d at 436.  Section 6 of the Restatement provides "the factors relevant to the choice of the applicable rule of law":

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2).  Neither party directly addresses the section 6 factors, and the Court concludes that Mississippi does not have a greater interest in the controversy than Louisiana under section 6.  Louisiana law applies to the coverage question.

### 2. Application of Louisiana Law to the Facts

Progressive correctly observes that Bricor employees were prohibited from using a company vehicle "unless that vehicle is assigned a job by a company dispatcher."  Pl.'s Mot. [48] Ex. C at 24.  In fact, Bricor's employee handbook explained that "Basically, any employee off

duty is restricted and forbidden to operate any company equipment/vehicle." *Id*.  And Bricor employees were likewise prohibited from operating the tractors while intoxicated.  While there is some dispute whether personal use was allowed while a tractor was dispatched, there is no dispute that Farve used the tractor for personal reasons and was drinking at the time of the accident.  Progressive therefore argues that he lacked permission and is not an insured under the omnibus clause.  The question, though, is whether these deviations matter.

  Courts in Louisiana apply the "initial permission" rule to afford broad coverage under liability insurance policies.  *See Sensebe*, 58 So. 3d at 448 n.8.  Under the "initial permission" rule, once initial permission—either express or implied—"has been established, any subsequent changes in the character or scope of the use do not require additional specific consent of the insured." *Barton v. U.S. Agencies Cas. Ins. Co.*, 948 So. 2d 1267, 1271 (La. Ct. App. 2007).  Or, as explained in the seminal case *Parks v. Hall*, once initial permission is established, it is no longer necessary to determine whether "at the time and under the circumstances of the accident, the driver was proceeding within the limitations of the permission of the assured to use the car." 181 So. at 191.  Instead, "coverage will be precluded only where the deviation from the use consented to amounts to theft or other conduct displaying utter disregard for the return or safekeeping of the vehicle." *Norton v. Lewis*, 623 So. 2d 874, 845 (La. 1993) (citations omitted).

  In this case, there is no question that Farve—a truck driver employed by Bricor—had Bricor's express permission to use his Bricor truck on March 16, 2011—the day preceding the early-morning accident.  Specifically, for a week or two prior to the date of the accident, Farve was stationed on standby at the Bihm yard in Port Allen, Louisiana.  Bricor paid Farve a daily rate for his time in Port Allen whether he hauled any loads on a given day.  Farve did not have

his personal vehicle with him in Port Allen; he left his car in the Bricor yard in Belle Chasse the day he drove the Bricor truck to Port Allen.  As a result, Farve explained that he would typically drive his Bricor truck to get something to eat or to go to a nearby truck stop to take a shower after he was done with his work for the day.[4]  On March 16, Farve attempted to pick up a load but it was too heavy for him to haul, so he returned to the Bihm yard before embarking on the evening's events that ultimately led to the fatal accident.  On these facts, the Court concludes that Farve had Bricor's express permission to use the Bricor truck for the week to two weeks he was stationed in Port Allen.[5]

The fact that Farve operated the truck for personal reasons and while intoxicated is of no moment.  Once permission is established, "any subsequent changes in the character or scope of the use do not require additional specific consent of the insured." *Norton*, 623 So. 2d at 875.  So the question becomes whether Farve's use of the truck constituted "theft or other conduct displaying utter disregard for the return or safekeeping of the vehicle." *Id.* at 845.  There is no suggestion of theft, so the issue is "utter disregard."

---

[4]The testimony of fellow Bricor driver Kenneth Farve, Sr.—Farve's father—indicates that drivers used their Bricor trucks for personal errands on a regular basis when stationed at a remote location without their personal vehicles.  Defs.' Mot. [46] Ex. 9, Farve, Sr. Dep. 22–24.

[5]Moreover, Farve arguably had Bricor's implied permission to use the truck for personal errands such as to get something to eat or take a shower at a truck stop.  Begovich testified that he understood Farve was not "necessarily stationed on the Bihm lot" but might "stay[] at a truck stop where he has the convenience of showers and food and everything."  Defs.' Mot. [46] Ex. 5, Begovich Dep. 74.  *See Manzella v. Doe*, 664 So. 2d 398, 402 (La. 1995) ("Generally, implied permission 'arises from a course of conduct by the named insured involving acquiescence in, or lack of objection to, the use of the vehicle.'" (citing *Francois v. Ybarzabal*, 483 So. 2d 602, 605 (La. 1986))).

On this point, Farve testified that he returned to the Bihm yard from his attempt to make a haul "[i]n the late evening" of March 16, 2011. Defs.' Resp. [52] Ex. A, Farve Dep. 74. It is not entirely clear what transpired thereafter (or when), but apparently Farve drove his Bricor truck to the nearby Pop-A-Top Saloon located at the Audubon Inn. At the Pop-A-Top, Farve, fellow Bricor driver Kenneth Parent, and Jason Clifton drank together for a time before walking to the Crazy Horse Cabaret where they continued to drink.[6] The men then walked back to the Audubon Inn, where Farve got into his tractor and ran over Clifton. After the police arrived, Farve took a blood-alcohol breath test, which indicated a blood-alcohol-concentration level of .112. *See* Pl.'s Mot. [48] Ex. J, Crash Report.

Louisiana courts have found—as a matter of law—that conduct similar to that involved here did not constitute an utter disregard for the vehicle's return or safekeeping. For instance, in *Pope v. Allstate Insurance Co.*, Benny Freeman had been instructed "not to drink on the job" and "to return the [insured's] van immediately upon completion of [his] jobs." 751 So. 2d 299, 301, 302 (La. Ct. App. 1999). Freeman ignored both instructions and registered a blood-alcohol level of 0.151% at the time of his arrest after a rear-end collision. Despite Freeman's deviation from his employer's instructions, the appellate court affirmed summary judgment finding coverage under an omnibus clause. "The fact that [Freeman] was intoxicated when attempting to return the vehicle does not indicate an utter disregard for the return of the vehicle." *Id.* at 302; *see also id.* ("Even though Mr. Smith told Mr. Freeman not to drink on the job, the liberal construction of

---

[6]Parent testified that the Bihm yard, where Farve's truck should have stayed overnight, was approximately two miles from the Crazy Horse. Parent Dep. [46-8] 168.

the statute and the definition of permission does not allow this being a deviation from the use consented to by the owner.").

*Arceneaux v. Norman* offers an even closer fit. 931 So. 2d 484 (La. Ct. App. 2006). There, Swift Transportation Company hired Pamela Norman as a truck driver and entrusted her with a vehicle which she could use "*for deliveries* and . . . keep . . . overnight parked at her residence." 931 So. 2d 484, 488 (La. Ct. App. 2006) (emphasis added). Swift likewise had policies "prohibiting the transporting of people in the truck and the consuming of alcohol while driving." *Id*. at 486. Norman ignored these policies and allegedly injured her passenger while driving intoxicated on what amounted to a joy ride. The court first noted that Norman had initial permission to drive the truck and then concluded that "[t]he deviation from use on the day of the accident did not amount to a disregard for the safekeeping or return of the truck." *Id*., at 409 (affirming summary judgment finding coverage); *see also Valdetero v. Commercial Union Ins. Co.*, 782 So. 2d 1210 (La. Ct. App. 2001) (affirming summary judgment and holding that employee who lacked permission to drive insured vehicle on day of accident yet took vehicle to visit friends and drink, had initial permission and deviation did not amount to theft or conduct representing utter disregard for return or safekeeping of vehicle).

Progressive does not directly attack the Cliftons' arguments under the initial-permission standards they cite and instead argues that those standards are not consistent with Louisiana law. *See* Pl.'s Resp. [57] at 8 ("The limitless rule promoted by the Clifton Estate is not consistent with Louisiana law.") Progressive relies upon *Aycock v. Jenkins Tile Co.*, where the Louisiana Court of Appeals, First Circuit, found that a driver did not have permission to drive a company vehicle. 703 So. 2d 117 (La. Ct. App. 1997). In *Aycock*, the driver used a company truck with

15

permission, but when he returned the vehicle to the employer after hours, the gate was locked so he returned home pursuant to company policy. The driver understood that he could not drive the vehicle after that for personal reasons but did so anyway. The court affirmed the trial court's conclusion that no permission existed. *Id.* at 122.

In the sixteen years since *Aycock* was decided, no court has ever cited it on the issue of permissive use. It also seems that the First Circuit holds a more restrictive view of the initial-permission rule than do the circuits in the cases cited above. *See, e.g.*, *Hartzo v. Am. Nat'l Prop. & Cas. Ins. Co.*, 951 So. 2d 1120, 1125 (La. Ct. App. 1st Cir. 2006) (holding that issue of "implied permission" is "extremely fact-sensitive" and "rarely . . . appropriate in a motion for summary judgment," noting "mischief caused by permissive user provisions," and submitting that "solution would be to hold that the permissive use clause is contrary to public policy"). Yet the Louisiana Supreme Court continues to hold that the policy supporting the rule is firmly entrenched in Louisiana law. *See Sensebe*, 58 So. 3d at 447 (observing that omnibus coverage for permissive users is "crucial to Louisiana's public policy"); *see id* (finding summary judgment appropriate despite "scant" record evidence on permissive use because permission is "easily inferred . . . under broad construction of the law").[7]

To the extent *Aycock* can be viewed as consistent with *Parks* and its progeny—including those cases decided after *Aycock*—the Court finds that the decisions from the other circuits are

---

[7]Cases like *Pope*, *Arceneaux*, and *Valdetero* found initial permission as a matter of law, and the evidence in this case is equally strong. But if this Court erred in finding no material dispute, then it would change its ruling on the motion to transfer venue because all of the identified witnesses and documents that speak to this issue are found in Louisiana. Some—including key witnesses Favre and Begovich—reside beyond this Court's subpoena power, and there would be obvious costs for cooperating witnesses.

more persuasive and consistent with the present facts. The tractor was assigned to Farve at the time of the accident, and while his use arguably exceeded the scope of permission, "the permission of the assured to [a driver] to use the car in the first instance, irrespective of the use to which he put the car while in his possession, was 'permission of the assured' within the meaning and contemplation of the 'omnibus clause.'" *Parks*, 181 So. at 191.

In light of the foregoing authorities, the Court concludes that Farve had initial permission to use the tractor. And there is no evidence that his use of the vehicle to drive approximately two miles to drink at a bar amounted to "theft or other conduct displaying an utter disregard for the return or safekeeping of the vehicle." *Norton*, 623 So. 2d at 875. Under Louisiana law, Farve was an insured under the terms of the policy's omnibus clause. Progressive's motion for summary judgment is denied, and the Cliftons' motion for summary judgment is granted.

IV.   Conclusion

The Court has considered all of the parties' arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, the Motion to Transfer Venue [47] is denied, Progressive's Motion for Summary Judgment [48] is denied, and the Cliftons' Motion for Summary Judgment [46] is granted. A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 30th day of January, 2014.

                                                s/ *Daniel P. Jordan III*
                                                UNITED STATES DISTRICT JUDGE